UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

**SIMON ARNAUD**

**VERSUS**

**WALMART INC**

**CASE NO. 6:23-CV-01032**

**MAGISTRATE JUDGE CAROL B. WHITEHURST**

## MEMORANDUM RULING

Plaintiff filed this suit for damages following a slip and fall incident at Walmart. He was initially represented by Dustin Gibson and Andrew Quackenbos with Domengeaux, Wright, Roy, & Edwards, LLC ("DWRE"). He later retained Megan Reaux, with Hill & Beyer, APLC ("HB"). The case settled In August 2025. DWRE intervened to recover attorneys' fees. (Rec. Doc. 54). Plaintiff's former counsel, DWRE, and current counsel, HB, disagree over apportionment of the attorneys' fees and filed briefs addressing their positions. (Rec. Doc. 59-63). The Court issues this ruling apportioning fees between the two firms.

### Facts and Procedural History

Within days of the incident, Plaintiff retained DWRE and executed a contingency fee agreement. (Rec. Doc. 59-1; Rec. Doc. 60-2, ¶1). DWRE referred him to Clark Integrated Medical Clinic, where Mr. Arnaud treated for almost a year without relief. (Rec. Doc. 60-2, ¶2-3). In the meantime, DWRE met with Mr. Arnaud

in person, by phone, and through email to discuss the case, prepare discovery responses, and prepare for and complete his deposition. DWRE also filed the Petition for Damages in state court, propounded discovery to Walmart, obtained video surveillance of the incident from Walmart, oversaw Mr. Arnaud's treatment with Clark Integrated, reviewed medical and imaging reports, researched liability issues, and began initial consultations with potential liability experts. DWRE last worked on the case in February 2024. (Rec. Doc. 59-2).

Mr. Arnaud declared that in May 2023 he first saw Dr. Trahan, who eventually recommended injections and/or lower back surgery, but DWRE was unwilling to pay for the additional treatment. (Rec. Doc. 60-2, ¶4). In early 2024, he had to leave work early (and later lost his job) because of lower back and leg pain and was brought to the emergency room. Over the next couple of weeks, he called DWRE multiple times without receiving a phone call back. (¶5). He then met Ms. Reaux at a family function and in February 2024 transferred his case to her. (¶6-7). Once Ms. Reaux took over (via contingency agreement), Mr. Arnaud began treating with Dr. Romero and Dr. Lasseigne, who provided relief. (¶8). In the meantime, Ms. Reaux oversaw and funded Mr. Arnaud's treatment, participated in mediation, retained experts in preparation for trial, continued discovery efforts, deposed Walmart's employee, opposed Walmart's motion for summary judgment, and negotiated a favorable settlement in August 2025. (Rec. Doc. 60, p. 5-8; Rec. Doc. 60-1).

Overall, DWRE handled the case for approximately fourteen months; HR handled the case for over eighteen months through finalization of settlement. DWRE seeks 40% of the attorney's fees, while HB maintains that DWRE should only receive 15%.

## Law and Analysis

"In diversity cases, a federal court must apply federal procedural rules and the substantive law of the forum state." *Hyde v. Hoffmann-La Roche, Inc.,* 511 F.3d 506, 510 (5th Cir. 2007). Thus, Louisiana substantive law regarding apportionment of attorneys' fees applies in this case.

> Louisiana courts have long approved of the contingent fee contract to compensate attorneys. … [T]he social utility of a *reasonable* contingency fee arrangement promotes access to needed legal services for those without means to afford the risk of financial loss. Therefore, contingency fee contracts, like all other attorney fee contracts, are subject to review and control by the courts—most notably for reasonableness.

*O'Rourke v. Cairns*, 95-3054 (La. 11/25/96), 683 So. 2d 697, 700–01 (emphasis in original; citations omitted).

Apportionment of contingency attorney fees depends on whether the plaintiff discharged his prior attorney with or without cause. *Id*. Counsel discharged without cause is entitled to "the highest ethical contingency fee agreed to, apportioned according to the *Saucier* factors." *Id*. at 702. These factors, set forth in Rule 1.5 of the Rules of Professional Conduct, include: (1) the time and labor involved, the

novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent. *Id.*, at n. 12 and 13.

In cases of discharge for cause, the Louisiana Supreme Court held that the court must first determine the amount of the fee based on the foregoing *Saucier* factors. *Id.* at 704. "Thereafter, the court should consider the nature and gravity of the cause which contributed to the dismissal and reduce by a percentage amount the portion discharged counsel otherwise would receive after the *Saucier* allocation." *Id.* In *O'Rourke*, the court found the discharged attorney entitled to 40% allocation of fees based on his work contributions, but his allocation was reduced by 25% based on the nature and gravity of the cause for his discharge, namely his failure to communicate with the client (which the court found most determinative), especially on major aspects of the case, and the attorney's unfavorable "social demeanor." *Id.*

In this case, the Court finds that both DWRE and HR contributed meaningfully to Plaintiff's case. Both firms and attorneys are well qualified to represent slip-and-fall plaintiffs throughout litigation, and both provided quality, diligent work for Mr. Arnaud. DWRE successfully filed suit, arranged initial treatment, and completed initial case management tasks, while HR funded and arranged successful treatment, opposed Walmart's summary judgment, likely contributing to a favorable settlement, and completed the bulk of the work on the case. HB argues that it took on a larger financial risk in order to cover Plaintiff's medical treatment, experts, mediation costs, and some of Plaintiff's living expenses. HB further argues that DWRE's unwillingness to spend money on the case and its belief that the case was unlikely to produce a good recovery justifies a lower allocation to DWRE. In short, HB maintains that Ms. Reaux obtained a better settlement than DWRE could have negotiated.

All evidence considered, the Court finds that, although DWRE performed important initial casework, HB's work was more significant to the favorable settlement. The Court finds that DWRE is entitled to 30% of the fee and HB to 70% of the fee, before consideration of cause for discharge.

HB maintains that DWRE's fee should be reduced to 15%, because Mr. Arnaud discharged DWRE for failure to communicate and for their refusal to help with medical needs. Mr. Arnaud declared that over a couple of weeks in early 2024,

he called DWRE multiple times without receiving a return phone call. (Rec. Doc. 60-2, ¶5). DWRE maintains that the pace of communication is derivative of the ordinary course of litigation and Plaintiff's ordinary progression of medical treatment for his specific injury. A lawyer's failure to communicate with his client may constitute just cause for discharge (e.g. *O'Rourke*, *supra*), but the Court does not find any egregious lack of communication in this case. DWRE's records evidence sufficient communication over the fourteen months of representation, including meetings, phone calls, and emails. (Rec. Doc. 59-2). The Court declines to impose a reduction based solely on DWRE's failure to return phone calls over "a couple of weeks" absent any evidence of negligent or willful failure to communicate, especially considering documented meetings and communications during the preceding thirteen months.

Otherwise, Mr. Arnaud's dissatisfaction stems from his unsuccessful early medical care and DWRE's refusal to pay for more treatment. DWRE highlights that Plaintiff was often non-compliant with treatment, expressed hesitation over options, and suffered from an unrelated heart condition that hindered treatment. (Rec. Doc. 62-1 – 62-4). The Court will not punish an attorney for unsuccessful medical treatment. Likewise, "an attorney's failure or refusal to advance [medical and litigation] costs to a client is not a just cause for the attorney's dismissal by the client." *Sims v. Selvage*, 499 So. 2d 325, 328 (La. Ct. App. 1986), *writ not*

6

*considered,* 503 So. 2d 7 (La. 1987). Instead, the Court has weighed the effect of medical treatment in the above analysis of *Saucier* factors, which considers results obtained. Based on the evidence presented, the Court declines to impose a reduction based on discharge for cause.

## Conclusion

For the foregoing reasons, the Court finds that Domengeaux, Wright, Roy, & Edwards, LLC is entitled to 30% of the attorney's fees and Hill & Beyer APLC is entitled to 70% of the fees.

THUS DONE in Chambers, Lafayette, Louisiana on this 14th day of October, 2025.

_____
CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE